# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BEVERLY JO JONES,                          :
AIS 233418,

                                           :

        Petitioner,

                                           :

vs.                                              CA 09-0600-WS-C

                                           :

FRANK ALBRIGHT,

                                           :

        Respondent.


## REPORT AND RECOMMENDATION

Beverly Jo Jones, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find that it is procedurally barred from reaching the merits of the claims raised by Jones.

## FINDINGS OF FACT

1.      On December 16, 2003, petitioner was found guilty, following a jury trial, of the crime of stalking. (Doc. 13, Exhibit A, Case Action Summary Sheet, at 3) Jones was sentenced, on January 23, 2004, to seven years imprisonment; she was ordered to serve eighteen (18) months in a jail-like facility with the remainder of the sentence suspended pending her successful completion of five years probation. (*See id*. at 5)

2.      Petitioner's motion for judgment of acquittal or, in the alternative, for judgment notwithstanding the verdict, as well as her motion for new trial, were denied on February 2, 2004. (*Id*. at 6) That same date, petitioner filed written notice of appeal. (*Id*.)[1]

3.      On October 29, 2004, the Alabama Court of Criminal Appeals, by memorandum opinion, affirmed petitioner's conviction and sentence. (Doc. 23, Exhibit E)

## I.

The appellant argues that the trial court erred in denying her motion for a judgment of acquittal because the State presented insufficient evidence to sustain her stalking conviction. More particularly, she argues that the evidence did not support the elements of harassing conduct, credible threat,

---

[1]      Thereafter, Jones filed several more post-trial motions, all of which were denied by the trial court. (*See id*. at 6-8)

or intent.

The victim, John Jerald "Jerry" Pilgrim, a divorce attorney in Mobile, testified that the appellant began to engage in a pattern of disturbing conduct while he represented her in divorce proceedings. Before he withdrew as her attorney at her request on December 20, 1994, the appellant would follow him and his current wife as they jogged to the YMCA. He testified that on one occasion, she drove out of the parking lot across the street from the YMCA, hitting the middle of his wife's car. The victim testified that after he no longer represented the appellant, she continued, over the course of several years, to write him hundreds of letters threatening him and his family. Many of the appellant's letters made reference to seeing the appellant (sic) "in hell" and "the end." He testified that on numerous occasions, the appellant would hand deliver letters to his mother-in-law, ex-wife, brother, and sister. On one occasion, the appellant hand-delivered a letter to the appellant's (sic) 91-year-old mother, leaving her crying hysterically. He testified that he apprehended the appellant as she was leaving his mother's home, blocked her vehicle in the driveway with his car, and called the police. When the police questioned the appellant about her presence on the premise, she responded that she was handing out "fliers." An investigation revealed, however, that she had no fliers in her possession. He testified that the appellant sent him items such as "feathers, dirt, grass, and worms in a Tupperware bowl." In her letters, the appellant referred to the victim's assigned parking spot "#56" and would leave "paraphernalia and letters" next to it. He testified that the appellant filed six lawsuits against him in court; including a suit in federal court in which the pleading "didn't make sense"; a suit in Mobile District Court; a suit in Baldwin County seeking to have his marriage license annulled; and a small claims case claiming that the victim had stolen the last verse of her song written about Judge Roy Moore. After being ordered by the court not to have any contact with the victim, the appellant continued to write him, stating that "Rule 33 . . . does not seem too bad of a rule to break," and "I feared I best just go ahead and

use my get-into-jail-free statement." Evidence was presented that the appellant was committed to Searcy State Mental Hospital in 1995 or 1996, and discontinued writing letters to the victim once she was placed on medication. When she left Searcy, however, she was no longer on medication and began to again write letters. The victim testified that when he testified in a proceeding to get the appellant recommitted to Searcy, the phone calls and letters "picked back up again." The appellant was then placed in a halfway house, but left and began contacting the victim again. After she appeared in a courtroom in which the victim was trying a case, he had to be escorted to his office by two security employees to avoid what the building manager describes as a "potential disastrous conflict." The victim testified that he observed the appellant frequenting the courthouse on numerous occasions. He also testified that she approached the building manager to inquire about renting office space next to the victim's office. He testified that the appellant's conduct had a considerable effect of his well-being, and that he feared for his safety and that of his family.

Additionally, the State presented evidence through the testimony of a psychologist, Dr. Doug McKeown, hired by the court to evaluate the appellant's competency to stand trial, that the appellant had a "well-documented history of bipolar disorder." Dr. McKeown agreed that the appellant was "still capable of understanding the right actions and the wrong actions" and had the "ability at that time to understand and appreciate her actions and behaviors." He indicated that the appellant voluntarily chose to engage in "non-productive type behavior" but was "in denial" that her own behavior fit into this category. He testified that the appellant was "very much more prone . . . toward impulsive-type behavior, . . . often reacting without thinking."

A reviewing court, when examining the sufficiency of the evidence on a motion for a judgment of acquittal,

4

must accept the evidence presented by the state as true, must view that evidence in a light most favorable to the state, and must accord the state all legitimate inferences from the evidence. Where there is legal evidence from which a jury could by fair inference find a defendant guilty, a trial judge should submit the case to the jury.

Section 13A-6-90, Code of Alabama 1975, states, in pertinent part:

(a) A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking.

[]

In order to prove a prima facie case of stalking, the State must show three elements. First, the State must prove that the accused intentionally and repeatedly follow[ed] or harass[ed] another person. Second, the accused must have made a credible threat. Finally, the accused must have intended to place the victim in reasonable fear of death or serious bodily injury.

Here, the State was required to present evidence that the appellant either followed the victim on more than one occasion or that the appellant harassed the victim on more than one occasion.

Harassing is defined in § 13A-6-92(c), Code of Alabama 1975. In order to prove harassing conduct, the State must show that (1) the accused engag[ed] in an intentional course of

conduct directed as (sic) a specified person, (2) that conduct alarm[ed] or annoy[ed] that person, or interfer[ed] with the freedom of movement of that person, and which serv[ed] no legitimate purpose, and (3) the course of conduct is such as would cause a reasonable person to suffer substantial emotional distress, and <u>must actually cause substantial emotional distress</u>.

The State's evidence showed that the appellant not only followed the victim on more than one occasion, but she also harassed him on numerous occasions. Based on the aforestated evidence, it is clear that the appellant's acts could, and did, in fact, cause the victim, a reasonable person, to suffer substantial emotional distress.

Additionally, the appellant's actions showed a pattern of intentional conduct directed at the victim. Although the appellant argues that the hundreds of letters she sent to the victim failed to establish "threats by innuendo", the fact that she made references to seeing the victim "in hell" and "the end," and attempted to have his marriage annulled, was evidence properly submitted to the jury for its determination. The appellant further argues that because the letters were the product of her mental illness, she never intended any such threats. Again, the jury had before it expert testimony that, despite the appellant's bipolar disorder, she had the ability to distinguish right from wrong and, although she was in denial, was aware of the nature of her actions.

Lastly, the appellant's argument that the State failed to prove that she made any "credible threat" toward the victim is without merit. A threat, whether express or implied, is credible if (1) it is made with the intent to cause the victim to fear for his or her safety or the safety of a family member; (2) the accused has the apparent ability to carry out the threat; (3) it causes the victim to fear for her safety or the safety of a family member[;] and (4) it causes reasonable mental anxiety, anguish or fear.

Not only did the appellant send the victim and his family members hundreds of threatening letters, she followed the victim and his wife as they were jogging, and proceeded to ram into the side of his wife's parked vehicle. Such evidence shows that the appellant had a complete disregard for the law, was highly unpredictable and, therefore, had the apparent ability to carry out her threats toward the victim.

The trial court's ruling denying the motion for a judgment of acquittal was correct.

.    .    .

III.

The appellant argues that the trial court erred by failing to give the definition of "harasses" as set out in the stalking statute, § 13A-6-92(c), Ala. Code 1975.

An examination of the record reveals that the trial court omitted the portions of that definition indicating that harassing conduct "must actually cause substantial emotional distress" and that such conduct could not include "constitutionally protected conduct."

.    .    .

Because the definition of "harasses" proposed by the appellant tracked the statutory definition, it was a correct statement of law. A review of the other two requirements, enunciated in Yeomans, however, indicates that no reversible error occurred here. First, the omission of the "constitutionally protected conduct" language from the definition of "harasses" was not erroneous because the trial court instructed the jury that "the conduct serves no legitimate purpose." In Bartlett v. State, 701 So.2d 305 (Ala. Crim. App. 1997), this Court held that the omission of the "constitutionally protected conduct" language from the definition of "harasses" was not erroneous when the

trial court instructed the jury that the conduct "serves no legitimate purpose." Because that portion of the appellant's requested instruction was substantially covered by the trial court's charge, her argument is without merit. Lastly, although not covered by the trial court's charge, the court's omission of the requirement that harassing conduct must cause the victim "substantial emotional distress", does not constitute reversible error because the appellant has failed to show any prejudice as a result of the omission. In order to prove a prima facie case of stalking, the State was required to prove, in pertinent part, that the appellant "intentionally and repeatedly <u>followed or harassed</u> another person." Because the State presented ample evidence, by <u>alternative methods</u>, that the appellant both harassed and followed the victim, the failure to charge on "substantial emotional distress", as it relates to the definition of "harassment" was harmless error. It need be noted that although the appellant took the stand in her own defense, the evidence was undisputed that she had followed the victim on numerous occasions.

IV.

The appellant argues that the jury's verdict finding her guilty of stalking was contrary to the weight of the evidence showing her insanity.

It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty; instead, the function of this Court is to determine whether there is legal evidence from which the jury could by fair inference find the defendant guilty. Where this (sic) is legal evidence from which the jury could by fair inference find the defendant guilty, this Court will not disturb the jury's verdict. Moreover, this Court has repeatedly held that it is not within the province of this Court to reweigh the evidence presented at trial.

The judgment of the trial court is affirmed.

(*Id*. at 1-6, 6 & 7-8 (some internal citations and quotation marks omitted; emphasis in original)) A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on November 17, 2004. (Doc. 23, Exhibit F)

4.    On or about December 1, 2004, Jones filed an application for rehearing. (Doc. 23, Exhibit G) Based upon this pleading, the Alabama Court of Criminal Appeals, on December 21, 2004, recalled the certificate of judgment it issued on November 17, 2004. (Doc. 23, Exhibit H) On January 7, 2005, the Alabama Court of Criminal Appeals overruled Jones' application for rehearing. (Doc. 23, Exhibit I)

5.    On or about January 10, 2005, Jones copied the Alabama Supreme Court with a petition for writ of habeas corpus filed in the United States District Court in Kansas. (Doc. 23, Exhibit J) The Alabama Supreme Court construed the pleading as a petition for writ of certiorari which it then struck for failure to comply with Rule 39 of the Alabama Rules of Appellate Procedure. (Doc. 23, Exhibit K)

6.    On or about January 23, 2005, Jones filed another application for rehearing in the Alabama Court of Criminal Appeals.  (Doc. 23, Exhibit L) This application was denied by order dated January 27, 2005 (Doc. 23, Exhibit

N). One day prior thereto, on January 26, 2005, the Alabama Court of Criminal Appeals issued its certificate of final judgment of affirmance. (Doc. 23, Exhibit M)

7.      On or about February 10, 2005, Jones filed a petition for writ of certiorari in the Alabama Supreme Court. (Doc. 23, Exhibit O) This petition was stricken for failure to comply with Rule 39(c) of the Alabama Rules of Appellate Procedure. (Doc. 23, Exhibit P)

8.      Thereafter, petitioner did nothing with respect to her stalking conviction and sentence until filing, on February 11, 2009, in the Circuit Court of Mobile County, Alabama a "Motion to Order Time Served and Cause of Action Voided." (Doc. 23, Exhibit Q)[2] One day prior thereto, on February 10, 2009, the trial court made an initial determination that Jones had violated the terms and conditions of her probation by violating the no-contact order. (Doc. 13, Exhibit B, Case Action Summary Sheet, at 2) Jones was ordered held in the county jail pending disposition of a commitment hearing in Mobile County Probate Court. (*Id.*) When the Probate Court matter was withdrawn on February 12, 2009, the trial court set Jones' case for review on February 17, 2009. (*Id.*) Following that review, Jones' probation was revoked based on a

_____

[2]      This motion was denied by the trial court on February 17, 2009. (Doc. 13, Exhibit B, Case Action Summary Sheet, at 3)

finding that she continued to have contact with the victim. (*Id*. at 3) Jones was ordered to begin serving the remainder of her sentence, that is, five and one-half (5½) years and was given credit for twenty-four (24) days spent in jail. (*Id*.)

9. The Alabama Court of Criminal Appeals denied a petition for writ of habeas corpus filed by Jones on March 6, 2009 (Doc. 23, Exhibit S) and also issued its certificate of final judgment of affirmance with respect to her appeal on March 13, 2009 (Doc. 23, Exhibit V). Jones' "Motion to Reconsider/Motion to Combine Hearings" (Doc. 23, Exhibit W) was construed by the Alabama Court of Criminal Appeals as an application for rehearing and was overruled (Doc. 23, Exhibit X).

10. On or about July 7, 2009, Jones filed a "three-headed" petition in the Alabama Supreme Court. (Doc. 23, Exhibit Y) The petition was denied on July 29, 2009. (Doc. 23, Exhibit Z) Petitioner's August 7, 2009 application for rehearing (Doc. 23, Exhibit AA) was denied by the Alabama Supreme Court on August 26, 2009 (Doc. 23, Exhibit BB).

11. Jones filed the instant petition on or about September 2, 2009 (*see* Doc. 1, at 14) and from that document the undersigned discerns that petitioner raises the following claims which she contends entitle her to relief:

(1) her constitutional right to communicate her defense to the attorney appointed to file her appeal was violated as was her right to effective representation on appeal;[3] and (2) denial of freedom of movement.[4] (*See* Doc. 1, at 5-7)[5]

12.     In answer to the petition, the respondent claims that Jones' federal habeas petition comes too late and is time-barred under 28 U.S.C. § 2244(d) (*see* Doc. 13, at 3-4; Doc. 23, at 8-9) and alternatively contends that this Court is procedurally barred from reaching the merits of petitioner's claims (*see* Doc. 23, at 9-11). Filtering through petitioner's many distorted

---

[3]     Petitioner claims in this regard, the following: "The only true issue that prevents my being found innocent of this 'stalking' charge is that the trial judge died & the appointed attorney did not follow the trial judge's order to continue throughout all appeals, so although I have filed many petitions & motions, I did not claim so above because my claim was not appeal[ed] from wrongful conviction but from 1st Amendment Rights." (Doc. 1, at 5) Petitioner's observation that her "claim was not appeal[ed] from wrongful conviction but from 1st Amendment Rights[,]" is inaccurate as it should be clear to anyone reading the opinion of the Alabama Court of Criminal Appeals on direct review that appellate counsel attacked Jones' stalking conviction primarily upon the basis that insufficient evidence was offered at trial to establish her guilt of that crime.

[4]     The undersigned is of the opinion that this issue is not a proper claim for federal habeas corpus relief inasmuch as it appears to be Jones' argument that she has been prevented by unidentified Alabama authorities from pursuing her domestic relations case in the state courts of Mississippi. (*See* Doc. 1, at 6) This "issue" raises no constitutional concerns with respect to petitioner's stalking conviction.

[5]     Jones has made clear that through the instant action she is solely attacking her underlying December 16, 2003 stalking conviction; she is not attacking the revocation of her probation. (*See* Doc. 27, at ¶ 10 ("Section 2254 Habeas Corpus Rules require the Probation Revocation in February 2009 to be addressed in a separate petition, which Petitioner did appeal but has not had time to process."))

arguments in response to this Court's show cause order (Doc. 29), the undersigned discerns the following arguments made by petitioner relative to the respondent's defenses:

I.   The Appointed Attorney to Trial and Appeal Ended Direct Appeal on Insufficient Grounds to Proceed on 17 Nov 2004.

1.   Petitioner's "Motion for Evidentiary Hearing" (Doc. # 18), Paragraph #2, explains that she presently possesses "the Nov 23, 2004 letter" from appointed attorney, Pete J. Vallas, in which he wrote that he would not appeal[,] inasmuch as he "concluded that there are insufficient grounds to proceed . . . to the Supreme Court of AL" and "therefore [he] did not submit a Request for Rehearing . . .," the Certificate of Judgment dated 26 JAN 2005 referenced by the Respondent's counsel cannot be valid.

2.   Even though Petitioner did pursue pro se from Mr. Vallas' lack of continuing the appeal, because Petitioner has never been allowed the court reporter's transcript nor a copy of the Attorney General's Appellate Brief, and until April 2005 had never seen her protected file with docket summary, which are necessary to plead a Certiorari, her appeal from the Certificate of Judgment gained by the appointed counsel would be erroneous in light of this fact.

.      .      .

[]   The trial judge died, the assistant district attorney [] went into private practice, thereby, Mr. Vallas' appointed status by the trial judge to the trial and through appeals is not revocable; inasmuch, the appeal from conviction ended upon the Criminal Appeals' Court's Certificate of Judgment dated 17 NOV 2005, and it appears Mr. Vallas' action tolled time limitations.

.    .    .

IV.    Speculatively the Limitations Period Has Been Tolled.

1.    Thus presented, above, supports that the limitation period has been tolled– stopped the running of.

2.    Only with the appointed attorney, Pete J. Vallas' evidence, can a possible "delayed appeal" establish a "date on which the judgment" is final per 28 U.S.C.A. § 2244(d)(1)(A), wherein Black's defines such appeal permissively granted by a review court after the time for appeal has expired in special circumstances.

.    .    .

Petitioner does not agree with Respondent's position that one or more procedural defaults have occurred, in answer to Question # 3a.

.    .    .

Petitioner does not [have] access [to] documents nor law to thoroughly try to reply to Questions # 3b, 3c or 3d while in prison, although Petitioner is innocent of the crime upon which the custody of 2002-the present is based, to answer Question 3e.

(*Id.* at 2, 3, 4, 8 & 10)[6]

---

[6]    Petitioner has made clear in her most recent pleading (Doc. 31) that her § 2254 petition is now ripe for a ruling by this Court. (*Compare id.* at 2 ("That Petitioner timely mailed the Court and served Respondent [with] her Response before she received the Court's [order] granting [] additional time; inasmuch, she has actually answered interrogatories 3b as well as can be expected from within the prison; interrogatories 3c and 3d do not apply in that there appears to be no procedural default; therefore, ***Petitioner will not need more time***; the court has granted all that Petitioner considers necessary to accomplish any better arguments from unlawful

## CONCLUSIONS OF LAW

### A.     Statute of Limitations.

1.     The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254.  *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

detainment." *with id.* at 3 ("Wherefore, the premises considered, Petitioner, ***having no[thing] further [] to offer the court than has been [presented], requests the court grant her writ of habeas corpus!***") (emphasis supplied))

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

2. Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and therefore, the timeliness of Jones' petition must be calculated under § 2244(d)(1)(A) based upon the date on which his incest conviction became final. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case since Jones' underlying stalking conviction became final in 2005.

3. Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such

review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Jones' conviction and sentence by memorandum decision released on October 29, 2004 and while Jones filed several applications for rehearing and attempted to seek certiorari review of her stalking conviction and sentence in the Alabama Supreme Court, her certiorari petitions were stricken for failure to comply with Rule 39 of the Alabama Rules of Appellate Procedure and both of her applications for rehearing were denied by Alabama's intermediate appellate court.[7] The Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on January 26, 2005; therefore, her stalking conviction became final on that date. *Cf. Brown v. Hooks*, 176 Fed. Appx. 949, 951 (11th Cir. 2006) ("On March 23, 2001, the Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for *certiorari* review in the Alabama Supreme Court, and his conviction became final on April 10, 2001, when the Certificate of Judgment issued."); s*ee Bridges v. Johnson*, 284

---

[7]     Jones' failure to file a proper petition for writ of certiorari in the Alabama Supreme Court prevented the court of last resort in Alabama from considering her direct appeal; therefore, the Supreme Court of the United States clearly would have been unable to consider Jones' case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

F.3d 1201, 1202 (11th Cir. 2002) ("Bridges pled guilty to terroristic threats, aggravated assault and stalking charges, and was sentenced to 26 years' imprisonment on November 12, 1996. He did not appeal his convictions and sentences, but he did request that his sentence be reviewed by a sentence review panel, pursuant to O.C.G.A. § 17-10-6. . . . As provided in 28 U.S.C. § 2244(d)(1)(A), his judgment became final on the date that the time for seeking direct review expired; this date was not affected by his application for sentence review, because an application for sentence review is not a part of the direct appeal process under Georgia law. . . . Accordingly, Bridges' judgment of conviction became final on December 21, 1996, the date on which his 30-day right to appeal the November 21, 1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333 (11th Cir. 2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997, the Third District Court of Appeal affirmed his conviction. . . . The mandate issued on February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254 petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S.

1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002).[8]

    4.    Jones' one-year period of limitations under AEDPA began to run on January 26, 2005 and expired on January 26, 2006. Petitioner is unable to take advantage of the tolling provision built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-

---

[8]    This Court recognizes that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States." *Pugh, supra*, 465 F.3d at 1299; *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997."). However, in those instances, as here, where a petitioner is not entitled to seek review in the Supreme Court of the United States, she is not entitled to the benefit of the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court, Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after the entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."). *See Pugh,* 465 F.3d at 1299-1300. As previously established, Jones did not file a proper certiorari petition seeking direct review of her conviction and sentence in the state court of last resort, that is, the Alabama Supreme Court; therefore, she was not entitled to seek direct review in the United States Supreme Court. *See id*. Jones' conviction became final when the certificate of judgment issued from the Alabama Court of Criminal Appeals on January 26, 2005, *Brown, supra,* and this Court need not add to that final judgment date the 90 days contemplated in Supreme Court Rule 13.1, *compare Pugh,* 465 F.3d at 1299-1300 *with Tinker, supra,* 255 F.3d at 1332 & 1333.

conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"); *cf. Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000) ("We agree with the Tenth and Fifth Circuits that the time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes."), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001), because she filed no Rule 32 state collateral attack on her conviction and sentence[9] and, in fact, the only pleading she has filed since her conviction which might be considered a collateral state attack is the "three-

---

[9] Petitioner's conclusory allegation to the contrary (*see* Doc. 29, at 6 ("Respondent's argument that the court referenced on page # 2 of its ORDER (DOC # 25), 'petitioner did not collaterally attack conviction and sentence' is not true[.]")) is not compelling because nowhere in her response does she ever reference collaterally attacking her conviction and sentence in the state courts of Alabama via Rule 32 of the Alabama Rules of Criminal Procedure (*see* Doc. 29). In fact, the collateral petitions Jones cites were all filed in various federal district courts in Alabama or Mississippi (*id*. at 5) and by petitioner's own description were "filed from the direct or indirect allowances of state courts for Complainant J. Jerry Pilgrim to counter-claim against her civil and criminal actions docketed in various state courts." (*Id*. at 6)

headed" petition she filed in the Alabama Supreme Court on or about July 7, 2009 (Doc. 23, Exhibit Y), well after the expiration of the limitations period. *Compare McCloud v. Hooks,* 560 F.3d 1223, 1227 (11th Cir. 2009) ("While a Rule 32 petition is a tolling motion under § 2244(d)(2), it cannot toll the one-year limitations period if that period has expired prior to filing the Rule 32 petition.") *with Howell v. Crosby,* 415 F.3d 1250, 1251 (11th Cir. 2005) ("On March 19, 1999, Howell's attorney filed a motion for an extension of time within which to file a petition for postconviction relief. That motion was granted and Howell's attorney filed a state petition for postconviction relief on August 30, 1999, more than two months after the federal limitations period elapsed. It is undisputed that Howell's motion for an extension of time did not meet the criteria of section 2244(d)(2) as a 'properly filed application' for postconviction relief."), *cert. denied*, 546 U.S. 1108, 126 S.Ct. 1059, 163 L.Ed.2d 885 (2006), *and Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000); *see also Pace*

*v. DiGuglielmo,* 544 U.S. 408, 413, 125 S.Ct. 1807, 1811-1812, 161 L.Ed.2d 669 (2005) ("As in *Artuz,* we are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exceptions. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay."). Accordingly, the only avenue by which this Court can consider the merits of petitioner's § 2254 petition is by finding that she is entitled to equitable tolling of AEDPA's one-year limitations period.

5.    The Eleventh Circuit has clearly embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary*

*for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir.2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition

on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) and *cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998).

6.     In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has she established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). Petitioner makes no argument that she was ignorant of the one-year limitations period.[10]  Instead, she appears to contend that the limitations period was tolled by her appointed attorney's action in abandoning her direct appeal after the Alabama Court of Criminal Appeals affirmed her conviction and sentence. While this argument could well impact a procedural default analysis, it does not impact the statute of limitations analysis because

---

[10]     In truth, such an argument would not serve as a basis to equitably toll the limitations period. *Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."); *see also Burton v. Deloach,* 2008 WL 2131398, *2 (M.D. Ala.) ("The law is well settled that an inmate's lack of legal knowledge, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."), *report & recommendation adopted by* 2008 WL 2131395 (2008); *see Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling.").

Jones' receipt of the January 26, 2005 certificate of final judgment of affirmance placed her on notice that she had one year from that date to either file her federal habeas petition attacking her stalking conviction or to collaterally attack her conviction in the state courts of Alabama via Rule 32 of the Alabama Rules of Criminal Procedure. Jones has nothing to blame other than her own lack of due diligence for the tardy filing of the instant petition; therefore, the undersigned is unable to find that this is one of those rare cases in which principles of equitable tolling can save petitioner from AEDPA's one-year limitations period.[11]

7.    Jones' final contention is that the one-year limitations period should be equitably tolled since she is actually innocent of stalking. (*See* Doc. 29, at 10 ("Petitioner is innocent of the crime upon which the custody of 2002-the present is based[.]")) Although the Eleventh Circuit has not yet decided

---

[11]    "[N]either an alleged inadequate prison law library nor limited access thereto establishes extraordinary circumstances which justify an equitable tolling of the limitation period." *Teel, supra,* at *1 (citations omitted) Moreover, "[a] petitioner's reliance on the assistance and/or erroneous advice of an inmate clerk fails to establish extraordinary circumstances necessary to excuse the untimely filing of a petition." *Burton, supra,* at *6 (citation omitted). Finally, the Eleventh Circuit has repeatedly determined that "attorney negligence is not a basis for equitable tolling[,]" *Holland v. Florida,* 539 F.3d 1334, 1339 (11th Cir. 2008) (citations omitted), *cert. granted,* ___ U.S. ___, 130 S.Ct. 398, 175 L.Ed.2d 267 (2009); *see also Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."), "especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline." *Howell, supra*, 415 F.3d at 1252.

"whether a showing of actual innocence is an exception to the one-year statute of limitations in AEDPA[,]" *Ray v. Mitchem*, 272 Fed.Appx. 807, 810 n.2 (11th Cir.),[12] *cert. denied*, __ U.S. __, 129 S.Ct. 204, 172 L.Ed.2d 170 (2008), it has guided courts to make the actual innocence inquiry as opposed to "addressing the difficult constitutional question of whether the limitations period constitutes a violation of the Suspension Clause if the petitioner can show actual innocence[.]" *Id.* To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Jones has not come forward with any new reliable evidence which establishes her actual innocence of stalking and thereby undermines her conviction of this charge. Accordingly, her federal habeas petition is time-barred. *Cf. Justo v. Culliver*, 317 Fed.Appx. 878, 881 (11th Cir. 2008) ("Justo fails to show actual

---

[12]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

innocence to the offense to which he pleaded guilty. No error has been shown in the dismissal of Justo's habeas petition as time-barred.").

**B.     Procedural Default Doctrine.**

8.     In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise

his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

9.      The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

10.      An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition

should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.    .    .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

11.    In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible

state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same

> ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption "may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

12.    When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted). Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted). In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted). Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted). Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional

> violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

13.     In his supplemental answer, respondent asserts that petitioner's two claims raised in the instant petition are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's admitted failure to raise these claims in the state courts of Alabama (*see* Doc. 1, at 5-7).

14.     It is clear to the undersigned that Jones has procedurally defaulted all claims raised in the petition, save for her claim of actual innocence, for the reason previously identified. More specifically, petitioner did not raise either of her claims on direct review nor did she raise them on collateral review in a Rule 32 petition. *Cf. Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("[T]here is no doubt that Alabama's discretionary review procedures bring Alabama prisoner habeas petitions within the scope of the

*Boerckel* rule."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002). Thus, this Court is procedurally defaulted from reaching the merits of these claims pursuant to *Boerckel, supra,* 526 U.S. at 848, 119 S.Ct. at 1734 (a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented unless claims and, therefore, has procedurally defaulted same), unless petitioner can establish that the cause and prejudice or fundamental miscarriage of justice exception apply, *Smith, supra*, 256 F.3d at 1138.

15.     Petitioner attempts to establish cause and prejudice by arguing that her appointed attorney abandoned her direct appeal after the Alabama Court of Criminal Appeals entered its decision affirming her conviction and sentence. (*See* Doc. 29) While this Court might find this argument appealing had petitioner raised in the instant case any of the arguments presented on direct appeal to the Alabama Court of Criminal Appeals, this argument fails in this instance since Jones attempts to raise in this federal petition claims she never attempted to present to the state courts of Alabama. Accordingly, petitioner has not established cause or prejudice for failing to raise the claims she attempts to raise in the instant to the state courts of Alabama.

16.     The fundamental miscarriage of justice/actual innocence

exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Jones to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 496, 106 S.Ct. at 2649-2650. Again, as previously stated, to be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup, supra,* 513 U.S. at 324, 115 S.Ct. at 865; *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). As already established, Jones has not come forward with any new reliable evidence not presented at trial which establishes her actual innocence and thereby undermines the jury's determination that she was guilty of stalking her divorce attorney, Jerry Pilgrim. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

     17.     Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the

undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and petitioner has clearly defaulted the claims she wishes this Court to address pursuant to *O'Sullivan v. Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Jones should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

## CONCLUSION

The Magistrate Judge recommends that Beverly Jo Jones' petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). Alternatively, petitioner is not entitled to any relief in this Court because she has procedurally defaulted all claims. Jones is not entitled to a certificate of appealability and, therefore, she is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 15th day of April, 2010.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[13] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[13]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).